MARY P. TERRY v. W. T. CUTLER ET AL.

Delivered October 17, 1896.

**1. Execution Sale—Writ Addressed to Wrong County.**
An execution sale of land, made by the sheriff of one county under a writ addressed to the sheriff of another county, is a nullity.

**2. Record of Judgment Lien—Expiration—Notice.**
Where, under article 3963, Paschal's Digest, providing that a recorded judgment created a lien on the land lying in the county, which would expire in four years unless reinscribed, a failure to so reinscribe destroyed the lien, and the record would not serve as notice. Following Flanagan v. Oberthier, 50 Texas, 379.

**3. Notice—Record of Void Deed.**
The record of a void deed does not convey notice of its recitals.

ERROR from Grayson. Tried below before M. H. GARNETT, ESQ., Special Judge.

*G. G. Randell, J. C. Edmonds,* and *W. W. Wilkins,* for plaintiff in error.—1. The court erred in its conclusion of law, to the effect, that the deed, from the sheriff of Grayson County to A. Rhine, was a nullity, because made upon an alias order of sale issued to the sheriff of Collin County; that is, because the alias order of sale was addressed to the sheriff of Collin County, the sale of the land in dispute, and the deed therefor, by the sheriff of Grayson County, were void. Buse v.

Mahlon et al., 1 Texas Civ. App., 335; Irvin v. Bevel, 30 Texas, 332; Cartwright v. Chabert, 3 Texas, 261; Austin v. Clapp., 5 Texas, 129; Borden v. McRae, 46 Texas, 396; Meader Company v. Aringdale, 58 Texas, 447; Crone v. Blum, 56 Texas, 325; Hibbard v. Smith, 13 How., 287; Taylor v. Doe, 50 Cal., 511; Tyrell v. Roundtree, 7 Pet., 464; Freeman on Ex., 2 ed., secs. 47, 55, 57, 63, 64, 65, 71, and authorities cited.

2. The court erred in its conclusion of law, to the effect that the record of the deed from the sheriff of Grayson County to A. Rhine was not notice to the defendants or any of them. Carter v. Hawkins, 62 Texas, 393; Jenkins v. Adams, 71 Texas, 1, Throckmorton v. Price, 28 Texas, 605; Woodson v. Allen, 54 Texas, 551; Fowler v. Simpson, 79 Texas, 611; Fry v. Baker, 59 Texas, 404; Schleicher v. Gatlin, 85 Texas, 270; 1 Devlin on Deeds, secs. 680-689, and authorities there cited.

3. The court erred in its conclusion of law, that if the certified copy of the judgment of A. Rhine against M. W. Allen, dated August 18, 1860, which was recorded in Grayson County, under Act of February 15, 1860, was notice of anything, it was only of the existence of the lien, and only held under the law for four years, without being reinscribed, and that at the time said Cutler and Platt bought from said Bledsoe the record of said judgment was not constructive notice. This was error because the record of a certified copy of this judgment was constructive notice to the world, and it was intended under the law to be such notice. Sayles' Early Laws of Texas, art. 2880.

*Standifer & Eppstein* and *E. C. McLean,* for defendants in error.—
1. It was not error for the court to conclude as matter of law, that the judgment in favor of A. Rhine v. M. W. Allen of date August 18, 1860, for $1171.35 was absolutely barred by limitation at the time said Cutler and Platt purchased the land from Bledsoe. Rev. Stats., art. 1634; Sayles' Early Laws of Texas, art, 2881; Willis Bros. v. Stroud, 67 Texas, 516.

2. The court did not err in its conclusion of law, to the effect that the record of the deed from the sheriff of Grayson County to A. Rhine was not notice to the defendants or any of them. Terry v. Cutler, 23 S. W. Rep., 539; Stiles v. Japhet, 84 Texas, 97; McKamey v. Thorp, 61 Texas, 653; Daugherty v. Yates, 35 S. W. Rep., 940.

3. It was not an error for the court to conclude as a matter of law that the recording in Grayson County of a certified copy of the judgment of A. Rhine against M. W. Allen obtained August 18, 1860, in District Court of Collin County, Texas, was if anything only notice of the existence of the lien and only held under the law for four years, without being retranscribed, and that at the time Cutler and Platt bought from Bledsoe, the record of said judgment was not constructive notice. Paschal's Dig., art. 3963, which is the same as cited by appel-

lant as Sayles' Early Laws of Texas, art. 2881; Castro v. Illies, 13 Texas, 229; Flanagan v. Oberthier, 50 Texas, 379.

RAINEY, ASSOCIATE JUSTICE.— *Conclusions of Fact*.—There is no statement of facts contained in the record, and the conclusions of the court below are adopted as the conclusions of this court (except the fifteenth and twentieth, as follows:

"1. Under an agreement made in open court, the land in controversy is worth, not including the improvements, $3600. The improvements in the aggregate are worth $2900, to-wit: W. T. Cutler, $1000; A. H. Shirley, $600; Shirley Platt, $600; Dave Platt, $300; Reinhardt Klumm, $150, and defendant Williams, $250. Under said agreement it was not necessary for the defendants to plead separately the statutes of limitation and to set up what each defendant claimed, but the same was admitted to be sufficiently pleaded in defendant's second amended original answer, filed May, 2, 1895. That Mary Platt is dead, and that Shirley Platt owns his interest in the land sued for. It was further admitted that A. Rhine owned the legal and equitable title to the land in controversy March 1, 1859.

"2. On March 1, 1859, A. Rhine, by a special warranty deed, conveyed the land in question to M. W. Allen; this deed purports to have been in consideration of $2000 cash, and shows on its face to have been an executed contract. It was filed for record and recorded July 23, 1859, in Grayson County.

That on August 18, 1860, A. Rhine recovered a judgment against M. W. Allen, in the District Court of Collin County for 1171.35, bearing 8 per cent interest from date; this judgment decreed that the debt was the purchase money for the land in controversy, describing it by metes and bounds, and was a foreclosure of the vendor's lien upon the land, and provided for an execution over against Allen in case the land should prove insufficient to pay the debt.

"3. A certified copy of this judgment was filed for record and was recorded in the record of deeds of Grayson County, Texas, September 26, 1860.

"4. On August 29, 1860, an order of court was issued out of the District Court of Collin County, Texas, on the judgment in favor of A. Rhine v. W. M. Allen, describing the land in controversy, and requiring the sheriff to sell the same as under execution to pay off said judgment of $1171.35, with interest from August 18, 1860, at 8 per cent, together with the sum of $9.50, costs of suit. This writ went into the hands of the sheriff of Grayson County, upon which he made the following return: 'By virtue of the within order of sale, I have levied upon the within described tract of land and advertised the same for sale on the first Tuesday in February next. This second day of January, 1861. Wm. D. Fitch, Dep'ty Shff., G. C.'

" 'Returned for an alias execution to sell the above described property, January 9, 1861. (Signed) Wm. D. Fitch, Deputy Shff., G. C.'

"That on or about the 4th day of February, 1861, an alias order of sale issued on said jugdment and went into the hands of the sheriff of Grayson County, and that officer, by virtue of this writ, on the first Tuesday in February, 1861, sold the land in controversy at public vendue, and A. Rhine, the plaintiff in the writ, bid the sum of $1082.50. That on the 28th day of March, 1861, E. J. C. Thompson, who was then the sheriff of Grayson County, Texas, went before S. Bostick, who was then the clerk of the county court of said county, and acknowledged said deed, that is, a deed for the land in dispute, acknowledging that said Rhine had paid the amount bid by him, which was filed for record in Grayson County on May 24, 1861, and it was recorded correctly on same date, with this exception,—the original is of the tenor following: 'Know all men by these presents that whereas, by virtue of a certain execution issued out of the District Court of Collin County, in favor of Abraham Rhine v. M. W. Allen, on a certain judgment rendered on the 18th day of August, A. D. 1860, and directed and delivered to me as sheriff of the County of Grayson, commanding me of the goods, chattels, lands and tenements of the said M. W. Allen, to make certain moneys in said writ specified, I, E. J. C. Thompson, sheriff as aforesaid, did upon the 2nd day of January, A. D. 1861, levy and seize all of the estate, right, title and interest which the said defendant on the 2nd day of January, 1861, so had, of in, and to the premises hereinafter described, and not having time to advertise and sell under said execution before the return day thereof, the same was returned to the District Court of Collin County; and upon the 4th day of February, 1861, and alias issued upon said judgment, commanding the sale of the herein described property as in the original. By virtue of said alias on the first Tuesday of February, 1861, within the hours prescribed by law, sold said premises, etc.' This deed as recorded, leaves out the words 'upon the 4th day of February, 1861, and alias issued,' so that as recorded, it reads—'and not having time to advertise and sell under said execution before the return day thereof, the same was returned to the District Court of Collin County, and upon said judgment commanding the sale of the herein described premises as in the original. By virtue of said alias on the 1st Tuesday of February, A. D., 1861, within the hours prescribed by law sold said premises, etc.' In all other respects this instrument was properly recorded and was in due form, and it was properly indexed.

"5. The original deed from E. J. C. Thompson, as sheriff, to A. Rhine was offered in evidence by the plaintiff as an ancient instrument, and I received it and considered it, notwithstanding the defendants filed an affidavit of forgery to it. In reference to this instrument, I find that the entire instrument is in the handwriting of Wm. D. Fitch, including the signature of E. J. C. Thompson, but that said Thompson was then the sheriff of Grayson County, and that he went before S. Bostick, the clerk of said county, and acknowledged the same, and that it is genuine. I also find that Wm. D. Fitch who wrote the deed was

his deputy at that time, and that both said Thompson and Fitch are dead.

"6.    That A. Rhine, by special warranty deed of date December 7, 1865, conveyed said land to Isaac Rhine.    This deed was duly recorded January 6, 1866.

"7.    That Isaac Rhine executed a power of attorney to A. Rhine on February 6, 1866, which was recorded in Grayson County, October 27, 1875, and which authorized A. Rhine to convey the land in controversy and make deed to the purchaser.

"8.    That Abe Rhine, acting under said power, as the attorney for Isaac Rhine, conveyed the land by special warranty deed on the 4th day of December, 1866, to the plaintiff Mary P. Terry.    This deed was recorded in Grayson County July 5, 1867.    At this time Mary P. Terry was the wife of Ephriam Terry, and had been for many years, and there is nothing in said deed which shows that the same was her separate property.    The proof shows, however, that this land was her separate property.

"That the plaintiff and Ephriam Terry were married in December, 1842, and that they lived together as husband and wife until January 3, 1887, on which day Ephriam Terry died; that at the time of such marriage the plaintiff had property of the value of $1000, which was her separate property; and after the marriage plaintiff's mother gave her a tract of land in Nacogdoches County of 640 acres, which was improved, and 200 acres of it in cultivation, worth about $4000, and that she owned other separate property.    That Ephriam Terry used her money and sold the land and other property and used the proceeds, borrowing the same from the plaintiff, and that when he bought the land in controversy on December 4, 1866, he had the deed made to her to repay her partly for her money which he had used, and I find that it was both the intention of Ephriam Terry and of the plaintiff that said land should be her separate property.

"On May 28, 1868, Ephriam Terry filed his petition in bankruptcy in the District Court of the United States at Tyler, Texas, and one Isham Cherry was appointed his assignee.    The 400 acres of land involved in this suit was not embraced in the schedule filed by said Terry.    Pending the bankruptcy proceedings, the said Cherry, as assignee, filed a plea or motion in said court, alleging that certain lands which had been bought by Ephriam Terry during his marriage with the said Mary P. Terry, and paid for with community funds, and which deeds had been taken in the name of said Mary P. Terry, were in fact assets belonging to said bankrupt's estate, and his pleading set up certain land (but did not include the 400 acres).    It required said Ephriam Terry to answer upon oath, fully showing such lands.    Subpœnas were issued thereon and were served on the said Ephriam and said Mary P. Terry, and they appeared in obedience thereto, and answered separately, setting out the 400 acres, among other lands, and that the same was the separate property of the said Mary P. Terry, and did not form any part of said bank-

rupt's estate. In May, 1872, the said court decided that said lands, including the 400 acres, were the separate property of said Mary P. Terry. This decree was never recorded in Grayson County, and none of the defendants to this suit ever had any notice thereof, but the said decree was duly entered of record in said United States District Court at the time the same was rendered.

"9. I find that M. W. Allen conveyed the land in controversy to Jos. Bledsoe by special warranty deed, dated September 19, 1874, and recorded January 18, 1876.

"10. That on June 5, 1874, a judgment was rendered in case No. 1929 of Ephriam Terry and wife v. S. R. Brown, et al., by which the decree was, that the plaintiffs took nothing by their suit, which was an action of trespass to try title to the 400 acres in controversy, and that the defendants go hence without day.

"While this judgment does not give the names of the plaintiffs otherwise than 'Ephriam Terry and wife' yet, I find from the pleadings in the suit which were in evidence that this suit was brought by Ephriam Terry and Mary P. Terry, his wife, who is the plaintiff to this suit.

"I find that said suit was brought by Messrs. Bass & Bass, attorneys at law, who resided at the time in Sherman, Texas, without any authority from Ephriam Terry or Mary P. Terry  The proof shows Mrs. Terry knew of the fact that said suit had been brought after the rendition of said judgment; but I find that neither she or Ephriam Terry ever ratified the bringing of said suit, and that she is not bound thereby. A sequestration was sued out in said case by Messrs. Bass & Bass, and the 400 acres sequestrated, and the land was replevied by the plaintiffs to such suit, but Bass made the affidavit, signed the plaintiff's name and that of her husband both to bond for sequestration and the replevy bond.   T. C. Bass died in 1878.

"The charge in the pleading that Judge Joseph Bledsoe acted as counsel for Ephriam Terry and Mary P. Terry in said suit, and that he took advantage of his trust and of the relation of attorney and client is not true, nor was said Bledsoe ever the attorney of said Ephriam Terry or Mary P. Terry, or either of them.

"I find that W. B. Brack was the attorney in said suit for S. R. Brown and W. J. Rector, the defendants thereto.

"I find that the alias order of sale or execution which was from the District Court of Collin County on February 4, 1861, on the judgment rendered in favor of A. Rhine against M. W. Allen in the District Court of Collin County, and under which the sheriff of Grayson County sold the land on the first Tuesday in February, 1861, as set out in finding fourth herein, was, in fact, directed to the sheriff of Collin County, and not to the sheriff of Grayson County, and that this writ was used as evidence in the trial of said case No. 1929 in the District Court of Grayson County of Ephriam Terry and wife v. S. R. Brown et al., and was never afterwards returned to the proper custody, and is lost or destroyed.

"11.   James Vaden, sheriff of Grayson County, under an execution issued out of the District Court of Grayson County, levied on said land, and a venditioni exponas was delivered to said sheriff on to-wit, May 26, 1875, in case No. 1929, above referred to, and which was issued against 'Ephriam Terry and wife,' and under it said Vaden sold the said 400 acres of land in controversy to W. B. Brack. This deed was made June 4, 1875, and was recorded in Grayson County, February 20, 1876, and was in consideration of eight dollars.

"I find that eight dollars was a shockingly inadquate consideration for said land, and that said Brack was the attorney of record (in the said case in which the said execution issued for costs) for the defendants, and the answer filed therein was in the handwriting of the said Brack.

"12.   That W. B. Brack brought a suit for the land in controversy in the District Court of Grayson County, against S. R. Brown and W. J. Rector, prior to August, 1876; that Judge Bledsoe intervened in this suit, claiming to be the owner of said land, and that on August 4, 1876, a decree was rendered in favor of intervenor Bledsoe, as against plaintiff and defendant.

"I find that neither the plaintiff nor her husband, Ephriam Terry, were parties to this suit.

"13.   That on October 3, 1892, Jos. Bledsoe, by deed with warranty conveyed to the defendant W. T. Cutler, 366 acres of said land. This deed was filed for record and recorded in Grayson County on the same day. It recites that it was made upon a consideration of $500 cash, and $700 secured by notes.

"The evidence aliunde the recitals in said deed from Bledsoe to Cutler shows that Cutler did in fact pay for such land in cash $500, and that he gave his notes to Bledsoe for $700, and this was paid by Cutler before the filing of this suit, and was a reasonable consideration for said land at the time he bought.

"That said Cutler did not have any actual notice of plaintiff's claim or title to said land, but at the time he bought he believed he was buying a good title to said land.

"All the other defendants, except Shirley Platt, claim title to the land set up by them respectively under conveyances from said Cutler. Said Cutler took possession of said land at the time he purchased the same, and he and the other defendants holding title under him have been in possession thereof ever since that time.

"14.   That on December 9, 1878, said Bledsoe conveyed by deed with warranty 34 acres of said land to H. Platt. This deed was duly recorded on the same day it was made. It recites that it was upon a consideration $120 cash.

"The evidence, independent of the recitals in said deed, shows that said Platt paid the said Bledsoe $120 for said land, and that it was the reasonable value of said land at that time. The said Platt did not have any actual notice of plaintiff's claim or title to said land, but at the time

he bought, he believed he was buying a good title to said land. Said Platt took possession of it at the time he bought it, and remained in possession until his death; and since that, Shirley Platt has been in possession of it, claiming under him.

"16. I find that Judge Bledsoe, when he bought the land from M. W. Allen, paid said Allen therefor in money $200, and surrendered to him the judgment in case of Abe Rhine v. M. W. Allen, rendered in the District Court of Collin County above referred to, which said Bledsoe claimed to own under a purchase made by him of the assignee in bankruptcy of said A. Rhine.

"That said Rhine had been adjudged a bankrupt, and the proof shows that said Bledsoe bought the judgment from his duly appointed assignee, one Ritter, who is now dead. That Bledsoe paid a valuable consideration therefor. This purchase by Bledsoe was in 1868 or 1869.

"I find that said Bledsoe, when he bought the land from M. W. Allen, was in possession of such facts and circumstances as would have put an ordinarily prudent man upon inquiry, which if followed up by him would have led to actual notice of plaintiff's claim to said land; he was present in the court when the case of plaintiff and Ephriam Terry v. S. R. Brown and W. J. Rector was tried; he had seen the original order of sale issued on the judgment in favor of A. Rhine v. M. W. Allen; he had seen the alias order of sale issued thereon about February 4, 1861; he knew that said judgment had been rendered; that the sale had been made by the sheriff of Grayson County, and that a certified copy of such judgment was recorded in Grayson County, in short—'he having eyes, would not see, and having ears, would not hear.'

"17. There never was any other order of sale issued on said judgment in favor of A. Rhine v. M. W. Allen after February 4, 1861; said judgment was never revived in any manner, and was absolutely barred by limitation at the time the said Platt and the said Cutler purchased said land from said Bledsoe.

"18. There never was any credit placed upon said judgment by said A. Rhine or by any other person, and there are no credits shown upon the same.

"19. That the original petition was filed in this case December 17, 1887.

"That Mr. Bass, the lawyer who brought the suit of Ephriam Terry and wife v. S. R. Brown et al., is dead, and he died before the filing of this suit."

Said 15th and 20th conclusions of the court below (omitted from the foregoing) are changed and modified, as follows:

"15. We find that Jos. Bledsoe, a reputable lawyer, when he sold to said Platt and said Cutler, represented that he had a good title to said land, upon which representations said parties relied, and did not make any examination of the record."

"20. There was a trial of this cause on December 18, 1890, and an appeal from the judgment to the Supreme Court of this State, and subse-

quent.y said cause was transferred to the Court of Civil Appeals, Second District, and there said cause was dismissed on motion alleging defective appeal bond. Subsequently said court reversed its ruling, and on June 28, 1893, allowed a new appeal bond to be filed, said cause was reinstated, and said motion to dismiss was overruled.

*Conclusions of Law.*—This is the second appeal of this case. The decision on the former appeal will be found in 23 S. W. Rep., 539.

We there held that the sale of the land in controversy, if made by the sheriff of Grayson County under a venditioni exponas issued to the sheriff of Collin County, was a nullity. The judgment was reversed, in order to ascertain whether or not that fact existed. On the last trial the court finds that the alias order of sale under which the sale of the land was made, was directed to the sheriff of Collin County. There being no statement of facts in the record to show to the contrary, we must take this finding of the court below as conclusive. We have no reason to change the views that we have heretofore expressed, and reference is made to our former opinion and the authorities therein cited to support this position.

We also held, in the former opinion, that in the event no title passed under the sale, Mrs. Terry was subrogated to the rights A. Rhine had under the judgment of foreclosure; and while she would not be entitled to recover the land, she would be entitled to recover the amount of the purchase money said land brought at said sale.

On this appeal another and different question is presented from any raised on the former appeal, and that is, whether or not the appellees were innocent purchasers, without being charged with notice of any equities existing in Mrs. Terry by which she would be entitled to recover the purchase money paid at the sale of said land under said judgment.

It is contended by appellant that the record of the certified copy of the judgment in Grayson County in favor of Rhine against Allen, conveyed notice to appellees of Mrs. Terry's equities in the premises.

The law existing at the time that such judgment was recorded in Grayson County prescribed that such record would create a lien upon the land lying in that county. It further prescribed that such lien would expire in four years, unless said certified copy was re-inscribed. Sayles' Early Laws, sec. 2881.

Said judgment had never been re-inscribed, and more than four years had elapsed from the original recording thereof, excluding the year suspending the statute of limitation, and, therefore, at the time appellees bought, no lien existed by reason of such recorded judgment. Flanagan v. Oberthier, 50 Texas, 379.

As said record at the time of sale created no lien upon the land, the record was of no effect, and conveyed no notice for any purpose.

As to the record of the sheriff's deed, or the deed itself, conveying notice, we are of opinion that it was a nullity, as the sheriff was with-

out power to make the sale, and the deed consequently conveyed no title; and it being void, the record of the deed was without force or effect, and no notice of its contents was conveyed thereby.   It has been repeatedly held that the record of. a void deed conveys no notice of the recitals therein.  Stile v. Japhet, 84 Texas, 97; Webb on Record of Title, sec. 154, note 3, and authorities there cited.

The judgment is affirmed.

Writ of error refused.                                                *Affirmed.*